(615 P.2d 163)

No. 51,531

City of Kansas City, Kansas, *Appellee,* v. Joyce Connor, *Appellant.*

Opinion filed August 1, 1980.

*Michael Lerner,* of Barnett & Lerner, Chartered, of Kansas City, for the appellant.

*Kathryn Pruessner Peters,* Assistant City Attorney, *Robert J. Watson,* City Attorney, and *Robert T. Stephan,* Attorney General, for the appellee.

Before Meyer, P.J., Rees and Parks, JJ.

Parks, J.: This is an appeal from a conviction of prostitution in violation of a Kansas City, Kansas, ordinance.

On the evening of January 11, 1979, Patrick Murphy, a vice officer with the Kansas City police department, checked into a room at the Kaw Valley Motel and telephoned a number given him by his supervisor. Defendant Joyce Connor answered the phone and arranged to meet Murphy at his motel. Upon arrival, Joyce asked Murphy for identification, explaining that she had to be careful because of the vice squad. He gave the defendant $80 in marked bills in exchange for a promise of "fun and games." Defendant then explained the use of a sex device she had brought along, and began to undress. Murphy signaled to the officers outside by turning out a light and then went into the bathroom. When the officers entered the room to arrest the defendant, she had already removed her upper garments and was in the process of taking off her slacks. During cross-examination, Murphy testified that he and the defendant did not engage in any sexual activity.

Defendant was convicted of violating Section 23-41 of the City Ordinances of Kansas City, Kansas, which reads in part:

"Prostitution is prohibited and declared unlawful within the corporate limits of the City of Kansas City, Kansas. A person is guilty of prostitution if he or she:

"(a) Is an inmate of a house of prostitution or *otherwise engages in sexual activity as a business* . . . ." (Emphasis supplied.)

Both the City and defendant agree that the italicized portion of the ordinance is the only language relevant to this case. The only term defined in the ordinance is "sexual activity" which includes, but is not limited to, "heterosexual intercourse, sodomy, cunnilingus, fellatio . . . ."

We note that this ordinance is different from the State statute which defines prostitution as follows:

"Prostitution is performing an act of sexual intercourse for hire, or offering or agreeing to perform an act of sexual intercourse or any unlawful sexual act for hire." K.S.A. 21-3512.

We are convinced that defendant's conduct would undoubtedly constitute a violation under this statute as an agreement to perform an act of sexual intercourse for hire. However, section 23-41 does not prohibit an offer or agreement to engage in sexual activity as a business. Therefore, defendant argues that the ordinance requires proof of a completed sexual act to establish the offense and that the City failed to prove such an act was committed. We agree.

It is an often reiterated rule of statutory construction that penal statutes must be strictly construed in favor of the persons sought to be subjected to their operation. *State v. Bishop,* 215 Kan. 481, 483, 524 P.2d 712 (1974). The criminal statute is not to be extended by the courts to embrace acts or conduct not fairly within its prohibitions (*State v. Doyen,* 224 Kan. 482, 488, 580 P.2d 1351 [1978]), and ordinary words must be given their ordinary meanings. *Bishop,* 215 Kan. at 483.

Applying these rules to this ordinance, it first appears that the ordinary meaning of the word "engage" connotes action. It means to "involve one's self; to take part in; to embark on." Black's Law Dictionary 622 (4th Ed. Rev. 1968). Therefore, in order to engage in sexual activity, as contemplated by this ordinance, it is necessary that one take part in sexual activity.

The Kansas City, Kansas, ordinances include another prostitution provision, 23-41.1(j), which prohibits a multitude of acts including "[s]oliciting, receiving, or agreeing to receive any benefit for doing or *agreeing* to do anything forbidden by this section or section 23-41." (Emphasis supplied.) The inclusion of this language prohibiting an agreement to engage in sexual activity as a business also indicates that section 23-41 requires more than

just the conduct preliminary to the sexual activity. A contrary conclusion would render the language of section 23-41.1(j) superfluous.

We therefore conclude that where, as here, no sexual act has occurred, the evidence is not sufficient to sustain the conviction of the defendant under section 23-41.

*Judgment is reversed.*