**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Rhonda SADOWSKI, a/k/a Rhonda Rasmussen, a/k/a Rhonda Miles, Defendant and Appellant.**

Crim. No. 861.

Supreme Court of North Dakota.

Jan. 27, 1983.

Robert G. Hoy, State's Atty., Fargo, for plaintiff and appellee; argued by Bruce D. Quick, Asst. State's Atty., Fargo.

Dosland, Dosland & Nordhougen, Moorhead, Minn., for defendant and appellant; argued by John E. Rowell, Moorhead, Minn.

ERICKSTAD, Chief Justice.

Defendant/Appellant, Rhonda Sadowski, is appealing from the verdict of guilty reached by the County Court of Cass County, from the subsequent judgment of conviction dated May 5, 1982, and from the denial of her motion for judgment of acquittal. We postpone making a decision on the merits of this appeal pending determination of a jurisdictional issue.

Sadowski was charged with and ultimately convicted of prostitution in violation of Section 12.1–29–03(1), N.D.C.C.:

"*12.1–29–03. Prostitution.*—A person is guilty of prostitution, a class B misdemeanor, if he:

1. Is an inmate of a house of prostitution or is otherwise engaged in sexual activity as a business; ..."

Specifically, the State charged her with being "engaged in sexual activity as a business."

Sadowski contends that the State's evidence against her proved that she attempted to engage in a single unspecified sexual act for hire, not that she was "engaged in sexual activity as a business." Sadowski asserts that two significant issues must be determined:

(1) Whether or not an isolated and single attempt to engage in sexual activity for hire constitutes being "engaged in sexual activity as a business;" and

(2) Whether or not the evidence adduced at trial proves beyond a reasonable doubt that Sadowski's attempt to engage in sexual activity for hire was not an occasional or isolated event, but rather an occurrence of a regular and continuous nature (*i.e.* a business).

To adjudicate the first issue, the meaning of the word "business" as used in Section 12.1–29–03, N.D.C.C., becomes significant. It is well established that when the word "business" is used in a statute, its meaning depends upon the context or upon the purpose of the Legislature. *Karnuth v. United States,* 279 U.S. 231, 243, 49 S.Ct. 274, 278, 73 L.Ed. 677 (1929); *Grand Forks Herald v. Lyons,* 101 N.W.2d 543, 547 (N.D.1960).

Prior to its enactment, Title 12.1 of the North Dakota Century Code was studied and analyzed by the Committee on Judiciary "B" of the North Dakota Legislative Council. The Judiciary Committee modeled

this title after the proposed Federal Criminal Code. Accordingly, Chapter 12.1–29 was derived from proposed Federal Criminal Code Sections 1841–43 and 1848–49.[1] Hence, when confronted with a question of statutory interpretation, we are guided by both the draftsmen's official comments to the proposed Federal Criminal Code and the relevant legislative history. *See, State v. Bourbeau,* 250 N.W.2d 259, 263–64 (N.D. 1977).

The legal theory and public policy underlying Section 1843[2] is disclosed by the drafter's commentary with regard to such section.

"Proposed section 1843 provides misdemeanor penalties for professional prostitutes.... The provision reaches only the person who makes prostitution her business, who manifests a willingness to give herself sexually to any stranger willing to pay for her services. This includes the inmates of a brothel, the call girls who work out of their homes or take appointments by telephone, and the streetwalkers who await monetary offers for sexual activity." Comment on Prostitution and Related Offenses: §§ 1841–49, Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. II (1970).

The Committee on Judiciary "B" also discussed the rationale and intent of the proposed statutory provisions dealing with prostitution. A study of the committee minutes reveals that in explanation of the provisions then under consideration, which are the provisions today under consideration, Mr. Robert Wefald[3] said:

"[Chapter 12.1–29] is aimed principally at those persons who promote prostitution, facilitate prostitution, or earn their living by inducing or forcing someone to engage in prostitution. The prostitute herself is regarded as a minor offender, or as more or less the victim of her own 'victimless' crime.

"The subchapter is not directed toward sexual activity per se, but rather is directed toward the promotion of sexual activity as a business.

\*     \*     \*     \*     \*     \*

"... Section 1843 treats the prostitute as a minor offender by making the actual act of engaging in prostitution a Class B misdemeanor." *See,* Minutes of the Committee on Judiciary "B", North Dakota Legislative Council, August 24–25, 1972, at 22.

Section 12.1–29–03, N.D.C.C., seems to be directed at the "professional prostitute ... who makes prostitution her [his] business." It is asserted that such language implies that the individual in question is engaged in an occupation of an ongoing nature for the purpose of earning a profit.

Without deciding this legal issue but assuming for sake of argument that she is correct in this respect, we turn to Sadowski's next issue which is one of fact. She contends that the State's evidence against her was insufficient to sustain a conviction for "engaging in sexual activity as a business" as it merely proved that she attempted to engage in a single unspecified sexual act for hire. When resolving a question regarding the sufficiency of evidence, we have unequivocally stated that at the appellate level we must view the evidence in the light most favorable to the trial court's judgment of conviction. *State v. Olmstead,*

---

1. Incidentally, Section 12.1–29-03(1), N.D.C.C., is also a verbatim copy of Section 251.2(1)(a), Model Penal Code:

   "§ 251.2 Prostitution and Related Offenses
   "(1) *Prostitution.* A person is guilty of prostitution, a petty misdemeanor, if he or she:
   (a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; ..."
   The comment to Section 251.2 states:

   "Subsection (1)(a) prohibits 'sexual activity' when it is engaged in 'as a business.' ... The prosecution would have to prove a course of behavior amounting to regular engagement in the business of prostitution. An isolated private transaction will not suffice."

2. Section 1843, Proposed Federal Criminal Code, is identical to Section 12.1-29-03, N.D.C.C.

3. Mr. Wefald was a special consultant to the Judiciary Committee.

246 N.W.2d 888, 890 (N.D.1976), cert. denied, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978); *State v. Neset,* 216 N.W.2d 285, 287 (N.D.1974).

The facts are not in dispute and can be briefly summarized. During February, 1982, Officer Sauvageau of the Fargo Police Department had three telephone conversations with Sadowski. These conversations culminated in a meeting of Officer Sauvageau and Officer Nicks with Sadowski and a friend of hers, Debra Finnesse, on the evening of February 19th at the Fargo Holiday Inn. This rendezvous was planned with the understanding that Sadowski and Finnesse would engage in sexual activity with the two officers in exchange for $100 apiece. Upon giving Sadowski and Finnesse each $100, the officers arrested and subsequently charged them with "engaging in sexual activity as a business" in violation of Section 12.1–29–03, N.D.C.C.

In finding Sadowski guilty, the trial court may have found the telephone conversations between Sadowski and Officer Sauvageau to be of particular significance.

> Sadowski: I am available for dates ... I am a conservative business woman because that's my true profession ...
>
> Officer Sauvageau: Oh, two professions ... What can a guy look forward to ...
>
> Sadowski: I know most gentlemen's needs ... I don't discuss business or dollars and cents over the telephone— I'm a professional ... morning is the best time for me because my legitimate business takes up most of my day ...

(Tape recording of conversation on February 1, 1982.)

> Sadowski: I know I could take care of one of your problems ... (laughter) I really need to make some money ...

(Tape recording of conversation on February 2, 1982.)

> Sadowski: Okay. This is the deal before I call my friend. It's a C Note and we don't punch time clocks and we like to have a nice time ... and it's a C Note apiece....

(Tape recording of conversation on February 19, 1982.)

It is possible that we could conclude that this constitutes substantial evidence to support the trial court's determination that Sadowski was engaged in prostitution as a business within the meaning of Section 12.-1–29–03(1), N.D.C.C. *But see, City of Kansas City v. Connor,* 5 Kan.App.2d 260, 615 P.2d 163 (1980). For reasons later stated, we make no determination of this issue at this time.

A peripheral issue in this case is whether or not a mere agreement to engage in unspecified sexual activity as distinguished from actually engaging in sexual activity constitutes a violation of Section 12.1–29–03, N.D.C.C.[4] Relative thereto, we note *Com. v. Danko,* 281 Pa.Super. 97, 421 A.2d 1165 (1980), in which the court held that "one cannot engage in a 'business' without offering or agreeing to sell one's product or services ... it need not be shown that the defendant engaged in sexual intercourse with any particular person, such as the complaining witness; what must be shown is that the defendant engaged in 'sexual activity as a business.' ..." *See also, Com.*

---

4. The phrase "sexual activity" is defined by Section 12.1–29–05(1), N.D.C.C.:

> "*12.1–29–05. Definitions for chapter 12.1–29.—* In this chapter:
> "1. 'Sexual activity' means sexual act or sexual contact as those terms are defined in section 12.1–20–02."

Section 12.1–20–02, N.D.C.C., reads in pertinent part:

> "*12.1–20–02. Definitions.* In sections 12.1–20–03 through 12.1–20–12:
> "1. 'Sexual act' means sexual contact between human beings who are not husband and wife consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, or the mouth and the vulva; or the use of an object which comes in contact with the victim's anus, vulva, or penis. For the purposes of this subsection, sexual contact between the penis and the vulva, or between the penis and the anus or an object and the anus, vulva, or penis of the victim, occurs upon penetration, however slight. Emission is not required.
> "2. 'Sexual contact' means *any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire.*"

*v. Wilson,* 296 Pa.Super. 264, 442 A.2d 760 (1982). A determination of that issue is also postponed.

With this background, we now turn to the haunting issue which has postponed our determination of the issues on the merits. It is an issue not raised by either party. It is the issue of the authority of Cynthia A. Rothe to hear and determine this case under the laws of this State in existence at the time of the trial of this case. As this court must raise such a jurisdictional issue on its own motion whenever that issue reasonably arises on the record, we hereby request that counsel for the State and counsel for the defendant prepare and file briefs with this court in the requisite number by 4:00 p.m., February 9, 1983, serve each other with a copy of said brief by that time and date, and that they appear in this court at 10:00 a.m. on February 11, 1983, to present oral argument thereon. In support of said briefs, it will be expected that counsel will file affidavits and other documents supporting their position on this issue. In requesting that this procedure be followed, we take judicial notice of the fact that Donald J. Cooke was the County Judge with Increased Jurisdiction of Cass County as of the date of the trial of this case on its merits.

In addition to briefing the issue of jurisdiction, we request that counsel brief the issue of the significance of the verdict, judgment, and order, in the event it should be concluded by this court that Cynthia A. Rothe did not have authority to act in this case.

We accordingly postpone making a decision on the merits of this appeal pending a determination of the jurisdictional issue. To facilitate that determination, we retain jurisdiction of this matter.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.