The TRAVELERS INDEMNITY
CO., Plaintiff,

v.

AMERICAN MOTORIST INSURANCE CO., Bernhard Odden, individually and as the survivor of Maxine Odden, deceased, David Paulseth and Deutz–Allis Corp., Defendants.

Civ. No. A4–89–215.

United States District Court,
D. North Dakota,
Northwestern Division.

June 12, 1991.

Michael J. Morley, Morley & Morley, Grand Forks, N.D., for plaintiff.

Carlton J. Hunke and Lori J. Beck, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D., for American Motorist, David Paulseth and Deutz–Allis Corp.

Charles L. Chapman, Chapman & Chapman, Bismarck, N.D., for Bernhard Odden.

## MEMORANDUM AND ORDER

BENSON, Senior District Judge.

This is a dispute regarding the priority of coverage between two automobile insurance policies. The parties seek a declaratory judgment as to which policy provides primary coverage and the primary duty to defend and which policy provides only secondary or excess coverage. The parties have filed cross-motions for summary judgment.

## FACTUAL BACKGROUND

The dispute arises as the result of an automobile accident. On November 4, 1986, defendant David Paulseth (Paulseth) was involved in a collision with another motorist, Bernhard Odden (Odden). Odden claimed personal injuries as a result of the accident; his passenger/wife, Maxine Odden, received fatal injuries. Odden subsequently commenced an action on his own behalf and as the survivor of Maxine Odden against Paulseth and Paulseth's employer, Deutz–Allis Corporation, seeking damages.

It is undisputed that Paulseth was in the scope of his employment with defendant

Deutz–Allis Corporation at the time of the accident and that Deutz–Allis was insured by defendant American Motorist Insurance Company (American Motorist). The American Motorist policy stated that it provided primary coverage for covered vehicles owned by Deutz–Allis and excess coverage for covered vehicles which Deutz–Allis did not own.[1] The car Paulseth was driving at the time of the accident was not owned by Deutz–Allis. American Motorist contends its policy provided only excess coverage for claims made against Paulseth and Deutz–Allis.

The car Paulseth was driving at the time of the accident was owned by and had been rented from Fisher Leasing Company of Minot (formerly known as Campbell–Fisher Leasing Company). Fisher Leasing is and operates as a National Car Rental franchisee. The rental agreement provided that the National Car Rental franchisee would provide automobile liability insurance coverage on a primary basis with limits of $100,000 per person and $300,000 per accident.[2]

As a National Car Rental franchisee, Fisher Leasing insured its rental fleet through the plaintiff, The Travelers Indemnity Company (Travelers Indemnity). The automobile policy issued by Travelers Indemnity stated that it provided liability insurance for anyone using a covered auto owned by the National Car Rental franchisee with the National Car Rental franchisee's permission.[3] Thus, it appeared from the provisions of the policies that the Travelers Indemnity policy provided primary coverage for claims made against Paulseth and Deutz–Allis along with the corresponding duty to defend, while the American Motorist policy provided only excess coverage.

After the accident, Travelers Indemnity undertook the defense of defendants Paulseth and Deutz–Allis against the Odden claims. However, when it became aware of the provisions of section 26.1–40–17 of the North Dakota Century Code which establishes primary and excess automobile liability coverage priority under certain circumstances, it tendered the defense to American Motorist. American Motorist refused to accept the defense of defendants Paulseth and Deutz–Allis because it contended that section 26.1–40–17 did not apply.

One week before trial was to commence, the Odden claims were settled. Travelers Indemnity and American Motorist contributed equally to the settlement, but each reserved its position on the coverage issue.

## DISCUSSION

To resolve the coverage dispute, the court must determine whether section 26.1–

---

1. The American Motorist Insurance policy in force and effect for Deutz–Allis at the time of the accident provided in part:

   5. OTHER INSURANCE
   a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectable insurance.

2. David Paulseth and his employer, Deutz–Allis, made arrangements to rent a 1986 Buick Skylark at the National Car Rental Franchise in Fargo (Lamb Car Rental Company) and to return the car to the National Car Rental franchise in Minot (Fisher Leasing). The vehicle was owned by Fisher Leasing and had previously been driven from Minot to Fargo by another renter. Fisher Leasing generally gave permission to other National Car Rental franchisees to rent out cars owned by Fisher Leasing on a one-way basis back to Minot. The rental agree-

ment shows that there was a 50/50 revenue sharing provision between Lamb Car Rental Company and Fisher Leasing regarding the income from the rental of the vehicle.

3. The Travelers Indemnity policy in force and effect for Fisher Leasing at the time of the accident provided in part:

   Part IV—LIABILITY INSURANCE
   A. WE WILL PAY.
   1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto....
   D. WHO IS INSURED.
   1. You are an insured for any covered auto.
   2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow....

40–17 of the North Dakota Century Code applies to the facts of this case.[4]

Plaintiff Travelers Indemnity contends that the statute applies and controls the priority of coverage, despite any contrary policy provisions. Accordingly, Travelers Indemnity maintains that the American Motorist policy which was in force for David Paulseth and Deutz–Allis is primary and that the Travelers Indemnity policy which was in force for Fisher Leasing provides only excess coverage. Travelers Indemnity further maintains that as an excess coverage provider, Travelers was not obligated to provide a defense for Paulseth and Deutz–Allis.

The defendants contend that the priority of coverage is determined by the provisions of the policies, and that the statute is not applicable.

The statute provides that it is applicable when 1) an insured is engaged in the business of selling, repairing, servicing, storing, leasing or parking motor vehicles *and* 2) the owner of the vehicles loans, rents, or leases a vehicle. Both conditions must be satisfied. If both conditions are satisfied, the statute determines the priority of coverage between the policies, despite any conflicting policy provisions.[5]

The defendants contend that the statute is not applicable because the first condition is not satisfied; they contend Fisher Leasing is not "engaged in the business of selling, repairing, servicing, storing, leasing, or parking motor vehicles."

Upon hearing, the court finds there is no genuine issue as to any material fact. The parties do not dispute the nature or extent of Fisher Leasing's activities. Rather, the parties dispute whether those activities constitute being "engaged in the business of selling, repairing, servicing, storing, leasing, or parking motor vehicles." This presents a legal question for the court to resolve.

The court concludes that Fisher Leasing is not engaged in the business of repairing, servicing, storing, or parking motor vehicles. Although Fisher Leasing does repair, service, store, and park cars, those activities are performed only with respect to the cars in its rental fleet. The court concludes that Fisher Leasing's performance of these activities is only incidental to its business of renting cars, and the activities per se do not produce income.

The more difficult question is whether Fisher Leasing is "engaged in the business of selling … [or] leasing" motor vehicles.

The defendants contend that although Fisher Leasing does sell cars, it is not "engaged in the business of selling" cars. They state that Fisher Leasing sells the cars in its rental fleet periodically in order to maintain a fresh inventory which will attract rental customers. The cars are sold only to dealers and at auctions, and at times are sold at a loss. The defendants

**4.** It appears section 26.1–40–17 has not previously been interpreted by the courts.

**5.** Section 26.1–40–17 provides:

**Establishment of primary and excess automobile liability coverages in certain instances.** When an automobile insurance policy which includes only automobile liability coverage, uninsured motorist coverage, automobile medical payments coverage, and basic or optional excess no-fault benefits, is in force for anyone engaged in the business of selling, repairing, servicing, storing, leasing, or parking motor vehicles and the owner of the vehicles loans, rents, or leases a vehicle to any other person or organization and the vehicle is involved in an accident out of which bodily injury or property damage arises, the following is applicable:

1. If no other automobile insurance policy is in force at the time of the accident for the person or organization to whom the vehicle was loaned, rented, or leased, the coverage provided by the motor vehicle owner's automobile insurance policy extends to the borrower, rentee, or lessee in the event the owner's automobile insurance policy extends coverage to the borrower, rentee, or lessee.

2. If another automobile insurance policy is in force for the person or organization to whom the vehicle was loaned, rented, or leased, any coverage provided by the motor vehicle owner's automobile insurance policy is excess coverage only but limited, however, by the terms of the owner's applicable automobile insurance policy. The policy afforded the person or organization to whom the vehicle was loaned, rented, or leased is primary. Any policy provisions at variance with this section must be interpreted so as to comply with this section.

N.D.Cent.Code § 26.1–40–17.

contend further that Fisher Leasing's periodic sale of rental cars is merely incidental to being "engaged in the business of renting" cars; it does not constitute being "engaged in the business of selling" cars.

The defendants also contend that Fisher Leasing is not "engaged in the business of leasing" cars. They state that Fisher Leasing, a National Car Rental franchisee, is engaged only in the business of "renting" cars from its space at the Minot Airport. The defendants argue that the terms "renting" and "leasing" have distinct meanings which the legislature must have appreciated because it used the terms "rents or leases" in the statute.

The defendants argue that renting and leasing are distinct in that "renting" is more short term than "leasing." The court notes some support for this distinction in the Oxford American Dictionary which defines the verb "rent" as "to pay rent for temporary use of." Oxford American Dictionary 766 (1980).[6] The defendants define renting as an arrangement lasting only thirty continuous days or less. *Cf.* N.D. Cent.Code § 26.1–40–17.1(2) (1989) ("A vehicle is rented for purposes of this section if the vehicle is rented under an agreement for thirty continuous days or less."). The defendants support this definition by noting that Fisher Leasing, as a National Car Rental franchisee, is required to renegotiate all rental agreements after thirty days. The defendants also note the deposition testimony of Thomas Swanson, an owner of Fisher Leasing, who acknowledged that "renting" is more short term than "leasing" and stated that Fisher Leasing does not do any actual "leasing."

The plaintiff contends that there is no meaningful distinction between renting and leasing. The plaintiff argues that the language of the statute contemplates that an entity engaged in any of the listed businesses is capable of loaning, renting or leasing a vehicle; that even if leasing and renting are distinguishable on the basis of duration, the statute contemplates that an entity engaged in the business of leasing could either lease (for a period of more than thirty days) or rent (for a period of thirty days or less); and that an entity which performs rental transactions is clearly within the scope of the statute, even if it only performs rental transactions.

The plaintiff's position in substance is that the phrase "engaged in the business of ... leasing" encompasses an entity engaged in the business of renting. The substance of defendant's position is that leasing and renting are distinguishable and that the legislature's failure to provide that the statute applies where an insured is "engaged in the business of ... *renting*" indicates that car rental franchisees such as Fisher Leasing were not intended to be within the scope of the statute. Both parties have presented rational arguments in support of their contrary positions. Thus, resort to the legislative history of this statute in order to ascertain the legislative intent is appropriate. *Keepseagle v. Backes*, 454 N.W.2d 312, 315 (N.D.1990) (citations omitted) ("If a statute's language is ambiguous or of doubtful meaning, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain legislative intent."); *see also State v. Sadowski*, 329 N.W.2d 583, 584–85 (N.D.1983) (reference to legislative history in order to determine the purpose of the legislature is appropriate when the word "business" is used in a statute).

Resort to the legislative history of section 26.1–40–17 reveals the purpose of this legislation was to establish primary and excess liability coverage priority when a garage liability policy is in force and the insured garage owner loans, rents, or leases a vehicle to a customer while the cus-

---

6. A distinction was also noted in dicta by another federal district court:

"'Renting' is the term used in the industry to describe the hiring of vehicles by salesmen, executives, engineers and tourists on a relatively short-term basis at the stipulated rates per mile and per hour or per day. 'Leasing' is the term used in the industry to describe the contract hiring of vehicles for a fixed period on a relatively long-term basis (for example, by the year or longer period)."
*Hertz Corp. v. United States*, 165 F.Supp. 261, 262 (D.Del.1958).

tomer's vehicle is being repaired in the garage. As initially drafted in 1969, this legislation specifically referred to garage liability insurance policies.[7]

Prior to enactment, the bill was modified and references to garage liability insurance were deleted. As enacted, the legislation provided that it applied: "When an automobile liability insurance policy is in force for *anyone engaged in the business of selling, repairing, servicing, storing, leasing, or parking motor vehicles* and the owner of said vehicles loans, rents, or leases a vehicle to any other person or organization...." 1969 N.D.Laws ch. 273 (originally codified at N.D.Cent.Code § 26–34–01). The plaintiff contends that by eliminating specific references to garage liability insurance, the legislature demonstrated its intent that the statute was not limited to garage owners and garage liability policies. This court disagrees. The modified language in the enacted legislation is not inconsistent with the legislature's stated purpose of determining coverage priority when a garage liability policy is in force. See, for example, section 27–8–9–6 of the Indiana Code, which defines "garage liability policy" as "refer[ring] to any motor vehicle liability insurance policy that affords coverage to a named insured engaged in the business of selling, leasing, repairing, servicing, delivering, testing, road testing, parking, or storing motor vehicles." Ind.Code Ann. § 27–8–9–6 (West). See also article 5.06–2 of the Texas Insurance Code which defines "garage insurance" as that issued to an insured "engaged in the business of selling, servicing, or repairing motor vehicles...." Texas Ins.Code Ann. art. 5.06–2 (Vernon).

Furthermore, the subsequent legislative history of this statute reveals the legislature's continued intent that this legislation address garage owners' liability policies. The minutes of a meeting of the House Transportation Committee, which was apparently held after the references to garage liability insurance had been deleted from Senate Bill 324, reveal the following discussion:

> MR. DICKSON, Insurance agent. Cars loaned to people whose cars are being repaired sometimes become involved in an accident. Trying to protect the garage owner who is the owner of the loaned car. There is no statute to cover the incidents discussed here. This bill is telling the insurance company what to do. It would make the person borrowing or renting or leasing the car be held as the primary liable person and their insurance to be used for coverage. The borrower, rentee, or lessee's insurance is to be used only as excess protection.

> BOB BAIN, local insurance agent with Byrne Insurance Co. discussed some actual cases in Bismarck where problem arose and garage was held for a $10,000 loss on an accident with a bodily injury claim. The driver of the car should get the higher liability rates, not the garage.

> AL ROTT, Manager of Corwin Churchill motors discussed an actual incident that illustrated the problem.

---

7. As initially drafted, Senate Bill 324 provided:

SECTION 1. ESTABLISHMENT OF PRIMARY AND EXCESS AUTOMOBILE LIABILITY COVERAGES WHEN A GARAGE LIABILITY POLICY IS IN FORCE. In all cases when a garage liability insurance policy is in force and the named insured under said garage liability policy loans, rents, or leases a vehicle owned by it to any other person or organization and the vehicle is involved in an accident out of which arises bodily injury or property damage, the following coverage shall be applicable:

1. In the event no other automobile liability insurance policy is in force at the time of the accident for the person or organization to which the vehicle was loaned, rented, or leased, the coverage provided by the garage liability policy shall extend to the borrower, rentee, or lessee, subject, however, to the terms of the applicable garage liability policy.

2. In the event that another automobile liability insurance policy is in force at the time of the accident for the person or organization to which the vehicle was loaned, rented, or leased, the coverage provided by the garage liability policy shall be excess coverage only and the limits of liability in the policy afforded the person or organization to which the car was loaned, rented, or leased shall be primary.

S. 324, 41st Leg. (1969) (initial draft).

Minutes of the House Transportation Committee on Senate Bill 324.

The statute was amended in 1983 by the passage of Senate Bill 2183. At a meeting of the House Industry, Business and Labor Committee to discuss Senate Bill 2183, Deputy Insurance Commissioner Irv Smith stated:

> This Bill is an amending statute of law in 1969 with [the] purpose of clarifying whose coverage is primary and whose is at excess in the event that you are using a garage owners [sic] vehicle.

> The 1969 law stated that if a garage owner was fixing my car and they permitted me to use one of their cars, my liability coverage is primary, and of course, the coverage by the garage owner would be secondary...."

Minutes of the House Industry, Business, and Labor Committee on Senate Bill 2183 (February 23, 1983).

Thus it appears that the phrase "engaged in the business of selling ... [or] leasing" is intended to refer to garage owners or persons insured under garage liability insurance policies. It further appears from the legislative history that the phrase is not intended to refer to car rental franchisees such as Fisher Leasing. In a January 17, 1983 meeting of the Senate Industry, Business and Labor Committee, Senator Reiten asked: "This refers only to the condition whereby you have your car in a garage and they give you anoter [sic] car to drive—it isn't a rent-a-car?" Deputy Insurance Commissioner Irv Smith responded: "Correct."

The court concludes that section 26.1–40–17 does not apply to car rental franchisees such as Fisher Leasing. In this case, the priority of coverage is to be determined by the provisions of the policies.

IT IS ORDERED:

1. Plaintiff's motion for summary judgment is denied. (Doc. No. 41).

2. Defendant's cross-motion for summary judgment is granted. (Doc. No. 48).

3. Pursuant to the insurance policies of The Travelers Indemnity Company and American Motorist Insurance Company referenced herein, The Travelers Indemnity Company has the primary obligation to indemnify, up to the limits of its policy, and has the sole obligation to defend David Paulseth and Deutz–Allis Corporation for claims made against them by Bernhard Odden, personally and as the survivor of Maxine Odden, resulting from the November 4, 1986 automobile accident.

4. The American Motorist Insurance policy No. 3ZM 057241–00 issued to Deutz–Allis Corporation provides only excess coverage, over and above the primary coverage of the Travelers Indemnity Company policy No. TRBAP–194T344–3–86 issued to Campbell–Fisher Leasing Company, for claims of Bernhard Odden personally and as the survivor of Maxine Odden against David Paulseth and Deutz–Allis Corporation arising out of the November 4, 1986 automobile accident.